Booth, Judge,
delivered the opinion of the court:
The plaintiff responded to certain advertisements and proposal put forth by the Commissioner of Indian Affairs, representing the Government, for certain construction work on Indian reservations. He procured six contracts, as follows: Three dated May 26, 1914, for the erection of three hospitals, one of brick at Rosebud Agency, South Dakota, another of similar construction at Cheyenne Diver Agency, South Dakota, and one of frame construction at Standing Dock Reservation, North Dakota. Of the remaining three, one dated December 26, 1913, provided for the rebuilding of a brick school house, No. 9, Rosebud Indian School, South Dakota; another dated March 23, 1915, provided for a frame hospital and gas house at Turtle Mountain Agency, North Dakota, a hospital at Mescalero, New Mexico, and one other hospital at Carson, Nevada; the last dated June 22, 1915, provided for a hospital at Fond du Lac, Minnesota.
Each of these contracts contained the usual Government stipulations, plans and specifications were furnished, and the undertakings were considered as embraced within them. The contracts and specifications are made a part of the findings by reference.
The first item for which judgment is sought has to do with the specifications as to flooring to be placed in the hospitals at Standing Rock, Cheyenne River, and Rosebud Agencies. *510 The specifications (see Finding V) covering this subject are carelessly drawn and abstruse. It is difficult to define their extent and exactions. Manifestly the plaintiff was to lay wood flooring except in the rooms, etc., specified for reception of composition flooring. The defendant, in soliciting proposals for bids, either by mistaking the requirements of the specifications, or in good faith intending to extend an option to lay one or the other sort of flooring, induced the plaintiff to present alternate proposals, binding him to a certain amount in addition to his lump sum bid if composition flooring was to be laid, and the lump sum bid if it was to be omitted and wood flooring laid. The record in this respect is indisputable. The bid of the plaintiff was accepted, and the alternate proposal for $100 additional for laying composition flooring was rejected. This is the inevitable result from the bid and acceptance. It follows logically from the fact that the $100 additional asked for laying composition flooring was not added to the lump sum bid. If subsequent to the making of the written contract it was discovered that the specifications, according to the construction put thereon by the defendant, exacted composition flooring — a construction open to doubt — it is quite evident that the mistake was mutual, and in the absence of any evidence tending to establish any other than perfect good faith, it seems to us the contract to this extent should be reformed to meet the actual and intended agreement of the parties. The plaintiff, with respect to this.item, was misled to his financial injury by the juoposals submitted by the defendant. The express wording of the specifications, out of which the mistake grew, were susceptible to the commission of just such an error, and where there is a mutual mistake in the-written contract, an unintentional variance between the proposals and the written instrument, the right to resort to the proposals and acceptance thereof, to ascertain what the parties did really agree upon, has been approved by the Supreme Court in a number of decisions. Harvey v. United States, 105 U. S., 671; Garfielde v. United States, 93 U. S., 242; Ackerlind v. United States, 240 U. S., 531. That the written contract does not reflect in this case the true understanding of the parties, we think, is apparent. The plaintiff, *511 as shown by the findings, is entitled to a judgment for $1,700.12 upon this item.
The location for the hospital at Eosebud Agency was distinctly shown on the block plan and specifications, part of the plans and specifications for this particular work. This was in exact conformity with the specifications examined by the plaintiff before submitting his bid, and as so exhibited the plaintiff had a positive right to rely thereon. The plaintiff was admonished to visit the site of the work. The duty of clearing and making it ready for the structure was imposed upon him, and he was held responsible for laying out his work correctly and for exactment of measurements. The site shown on the plans was immediately adjoining the agency village. A sufficient supply of water was available, as well as business houses and places where his laborers might secure board and lodging. When the plaintiff’s superintendent reported at the agency to commence work he was informed by the agency supervisor that he — the supervisor — would not approve the building site shown on the plans, and the plaintiff was compelled, despite his protest, to erect the building on a new site, a half mile away by wagon road, at a point devoid of any conveniences, poor water supply, and more difficult and expensive to reach in the transportation of materials. By what authority the agency supervisor so arbitrarily set aside the positive provisions of the contract and the Indian Office afterwards approved the same, is a little difficult to understand. An effort is made to justify the procedure under paragraphs 2 and 14 of the “ General conditions,” as shown in Finding IV, and article 3 of the written contract. We need not indulge in a lengthy discussion to demonstrate their utter inapplicability. The right to make changes, so confidently relied upon, from the very language of the clauses according this right, has obviously no reference whatever to the location of the building. The superintendent of the school was positively forbidden to intervene in the matter of site, if the same was designated on the topographic map. It is almost inconceivable that the parties ever intended that the contractor should be left in the dark as to where he must perform the work, and be subjected to shifting opinions as *512 to the availability of the site selected. This matter was very properly put at rest by the specifications and thereafter it required the mutual consent of the parties to change it. Findings IX and X disclose the situation in detail. Judgment will be awarded on this item for $359.65.
The plaintiff was subjected to a deduction of $146, the expense occasioned the defendant in making good some defects found on final inspection of the work, in the flooring of certain rooms in the hospital building at the Standing Rock Agency. This deduction is expressly authorized by the terms of the contract. See paragraphs 2 and 16 of “General conditions” and article 6 of the contract. The defendant observed the terms, of the contract and specifications in making this deduction. The amount withheld was the exact cost of repairing the defects.
The rebuilding of the brick schoolhouse at Rosebud Indian School, South Dakota, as the contract and specifications indicate, was an obligation to erect the new building upon the standing foundation left over after the destruction of the former schoolhouse by fire. The specifications recite: “The building will replace and duplicate a burned structure, the walls of which have been leveled to the water table.” After the contractor arrived on the scene it was soon discovered that the old foundation was valueless, and to use it in connection with the contract work was impossible. The defendant, upon being notified of this condition, acceded to the truth of the fact. The contractor submitted, at the request of the defendant, a bid to do the work required to construct a new foundation and relieve the situation. The defendant rejected the bid after a considerable time, and finally the defendant, at its own expense and on its own account, did the work. It required the defendant from March 29, 1914, until June 2, 1914 — two months and three days- — to make up its mind and complete this relatively small job, during which time, the most opportune of the working year, the plaintiff could do nothing toward going forward with his contract. The plaintiff, relying upon the workability of the plans and specifications, had his contractor engaged to lay the brick ready and on the ground *513 March 29, 1914. He and bis working force were present to commence work. After waiting around for about a week this subcontractor and his force, seeing no prospect of immediate employment and not desiring to impose additional expense upon the plaintiff, returned home and refused thereafter to return.
The result was that the plaintiff was compelled to do the work by “ force account,” and at an enhanced cost. In addition to this, the plaintiff’s superintendent was compelled to remain on the work, first because he anticipated the acceptance of the plaintiff’s bid to rebuild the old foundations, and, secondly, because the defendant assured him it would soon be accomplished and the plaintiff could proceed. It is quite difficult to approach with patience a contention that this loss to the contractor may be imposed upon him under the terms of the contract, as it was. This was not, and by no manner of strained construction may be tortured into a change, an addition to or omission from the contract work. The contractor was positively assured that certain conditions obtained, conditions vitally essential to the performance of the contract work. He was told that a foundation existed intact, upon which he might rest the superstructure. This proved to be a representation which was not true. What then ? The defendant did not add to nor subtract one single item of work required under the terms of the contract. It set about, as it should have done, to make its representations reflect the true situation previously set before the plaintiff. It was, in effect, a disconcerting and belated performance of an act which through its own carelessness occasioned the contractor real loss. To say that the contract in terms absolves the defendant from making its word good, and imposes loss upon the contractor because of its own stupidity, borders closely upon the absurd. The plaintiff engaged to do the work according to the plans and specifications. The defendant who drafted them impliedly assumed their sufficiency, and if it was found impossible to proceed because of an error committed by the defendant, it is difficult to perceive how such a blunder may be brought into provisions which expressly cover, and cover only, de *514 tails of constraction. The facts are stated in Finding XII. The plaintiff is entitled to a judgment for $2,228.16.
There is a measure of justice in the plaintiff’s demand for extra compensation for additional plastering required when the old foundation was supplanted by the new. The claim, however, is one of a character difficult to prove in view of the contract. The contractor agreed to abide the directions of the superintendent as to removing all portions of the old work, and where the same was disturbed or changed to replace it with new. It is apparent, then, that what the contractor might or might not have been relieved from doing in the way of plastering, where he was to erect a new structure on an old foundation, is a matter of conjecture. At any rate, we find no sufficient proof of the additional cost, and no way from the record to segregate the extent of work which might have been required under the contract had the old foundation remained undisturbed, from what was required under changed conditions. Manifestly, under the terms of the contract, what was required was within the agreement. See Finding XIII.
Paragraph 13 of the “ General conditions,” Finding IV, confers upon the Commissioner of Indian Affairs the undoubted right to order the contract work to cease when in the judgment of the commissioner the interests of the Government demanded the same. The mere fact that a contemplated change which caused a cessation of the work was not finally adopted will not of itself suspend the authority of the commissioner under this clause. The commissioner was in good faith considering the substitution of electricity for gas in lighting the hospital at Turtle Mountain Agency. He solicited from the plaintiff a bid for making the substitution in the contract. It subsequently developed that the substitution would not be made, and while the process of final determination consumed a considerable length of time, nevertheless the plaintiff, by signing the contract, must have known by its terms that just such a situation was possible. There is nothing in the record to sustain a contention that what was done consumed an unreasonable length of time, in view of the situation of the parties and the circumstances *515 under which the work was to be done. At any rate, the contract provided for the contingency and the contractor assumed the risk.
In the contract for the construction of a hospital at Carson there was an express provision as follows:
“ If any extra six (6) inch sewer is required by the party of the first part, to be constructed, the same shall be constructed by the party of the second part for the sum of eighty (80) >cents per linear foot, provided it can be and is, constructed in an earth drainage less than eight (8) feet deep, and for the sum of one dollar and fifty ($1.50) cents per linear foot, if it is required to be placed in a rock drainage less than eight (8) feet deep.”
When words are given their ordinary meaning, it is plain from this provision that in the event this six-inch sewer was constructed the plaintiff was to do the work and be paid the stipulated price. The defendant determined upon doing the work, but declined to accede to this provision of the contract and did it on its own account, irrespective of the plaintiff’s contractual rights. It is true that it was done for less than the contract price, but we are confronted with legal rights under a contract, not retrenchments irrespective of contractual rights. The defendant justifies this departure from the express provisions of the contract under article 8 of the contract itself. Said article 3 conferred upon the Commissioner of Indian Affairs the right to make changes, alterations, or omissions from the contract work. It is to be observed, however, that article 3, like all other similar provisions in Government contracts, is not unilateral. It in' express terms points out the precise way in which the commissioner shall proceed and protects from invasion the rights of the contractor, when the authority there conferred is invoked. There is not a single line or word in the article which authorizes the commissioner to invoke its provisions and deprive the contractor of his right to do work he is legally obligated to do, or preclude him from participating in the changed, modified or omitted works, to the extent at least of his decreased or enhanced compensation. There is, it seems to us, no authority delegated to the commissioner by the terms of this article to abrogate the contract and cur *516 tail the contract construction work by taking from the contractor an integral part of what the contractor agreed to do, and, because it may be done at less expense, employ someone else to do it, or substitute the defendant for the contractor.
The contention that under this article a portion of the work may be designated as omitted for the purpose of enabling the defendant to do it, is, to say the least, quite novel. In truth and in fact the work was not omitted. The very thing the contractor agreed to do, and which the defendant agreed he might do, was done. It is to-day in the ground completed just exactly as the contract contemplated it might be. Article 3 was designed to anticipate changes, alterations, and omissions in the work as it proceeded toward completion. It was a comprehensive reservation of the right to amend the plans and specifications in the course of the construction — changes, alterations, and omissions which might suggest themselves after the work was entered upon — and which could not be made if the contract was allowed to stand as a rigid and indexible determination of all its details. To hold that under this article the defendant had the right to deprive the contractor of doing Avork clearly Avithin the terms of the contract, Avhich the defendant Avanted done, and which it had decided to haA^e done, Avould, it seems to us, render Avritten agreements of this character subject to such extensive depletions in the quantum of work to be performed, and so fluctuating as to compensation to be received, that contractors avouIc! be difficult to obtain. If the defendant had a right to abstract from the contract Avork this one item and do it on its oaaui account, it had the equal right of taking aAvay any other parts from the contractor, doing them for less than they agreed to pay the contractor, and thereby imposing upon the latter the completion of all integral parts of the Avork Avhich were more expensive and costly, and depriving him of profits in the other class of work AAdrere they were more certain to accrue. Judgment Avill be aAvarded under this item for $224. See Finding XY.
The claim for extra expense caused by the change in the location of the site for the hospital at Fond du Lac, Minnesota, is alloAved. The merits of a similar controversy have *517 been heretofore discussed under Finding IX. Judgment for $224.
The remaining claim for damages due to delayed inspection of the hospital at Mescalero, New Mexico, fails for want of proof.
Judgment is awarded the plaintiff under Findings VII, VIII, X, XII, XV and XVI, for the total sum of $4,736.53. It is so ordered.
Graham, Judge/ Hat, Judge, and Campbell, Chief Justice, concur.
Downet, Judge, took no part in the decision of this case.