Williams, Judge,
delivered the opinion of the court:
The plaintiff is a certified shorthand reporter who for many years has been engaged in the business of making stenographic reports of hearings, conferences, and other meetings, and reporting the testimony of witnesses, etc.
Upon invitation of the Federal Trade Commission, plaintiff submitted a sealed bid for stenographic reporting service to be rendered the Commission during the fiscal year ending June 30, 1932. Plaintiff’s bid being lower than the bids submitted by other reporters, he was awarded the contract, which was entered into on June 29, 1931.
The contract provided that the plaintiff should, during the period from July 1, 1931, to June 30, 1932, steno-graphically report all hearings before the Commission or before any person or persons designated by the Commission to take testimony or conduct proceedings which it might require to be reported; that in the performance of such services he should,-at all times, be governed by the instructions of the presiding officer in matters affecting the composition of the record; that everything spoken during the hearing should be recorded unless the presiding officer should otherwise direct; and, further, that the plaintiff should perform the work in a businesslike manner and according to the best standards of the reporting profession, and at all times provide as many competent stenographers *448 and maintain such staff and equipment as might be necessary for the prompt furnishing of satisfactory transcripts. The contract further specifically provided for the manner in which the transcripts were to be typed, the quality and the size of the paper to be used, the manner of indexing, and the arrangement and numbering of the exhibits, and the binding of the transcripts. It also provided that exhibits should not be copied into the record, and photostatic copies of exhibits for inclusion in the record should not be made by the reporter unless the presiding official so directed.
Under the terms of the bid, which became a part of the contract, the plaintiff was “to furnish the labor and material to perform the work mentioned in said contract, under the conditions and in the manner therein provided and without further charge” at certain prices. The schedule of charges provided that he should receive 50$ a page for ordinary copy (ordinary copy meaning one delivered to the Commission within two weeks after the close of each day’s hearing; and the per page rate being for three copies of the transcript, the original and first and second carbon), and 15$ a page for daily copy (daily copy meaning one delivered not later than 9:00 A. M. the morning following the hearing) . The contract permitted of the plaintiff selling to the general public copies of transcripts of public hearings, conferences, etc. The price to be paid plaintiff for exhibits when copied into the record at the direction of the presiding official was the same as for other pages of the transcript. The plaintiff was required to report proceedings and hearings in any place designated by the Commission within the territory and the limits of the United States at the rates set forth in the contract and whatever expense was incurred on account of travel or other incidental expenses in rendering such service was to be borne by plaintiff, the measure of the compensation to plaintiff for all services to be rendered being fixed by the rates heretofore mentioned.
Plaintiff maintained a large staff of competent stenographers and performed the services required of him under the contract to the entire satisfaction of the Commission. Part of the work performed by plaintiff consisted in reporting *449 the proceedings and testimony taken before the Commission in nine cases, which were referred to and designated as the Hat cases, appearing on the docket as Numbers 1895 to 1904, inclusive, except docket Number 1900. Each of these cases was a separate case against separate respondents; after some specific testimony had been taken in various cases, the Commission, through its attorney, instructed its examiner, the presiding officer at the hearing, as follows:
Now, Mr. Examiner, I wish you would instruct the reporter that the proceedings today and from now on, with reference to all of it, except testimony which we may hereafter take as to particular respondents, being general testimony, applying to all these Hat cases, shall be transcribed and included in.the minutes in the record of each one of these cases from 1895-1904, inclusive, with the exception of docket Number 1900, as if taken separately in each case. That will save the trouble and time of doing it in each case separately.
Plaintiff complied with these instructions and in reporting the testimony in the nine so-called Hat cases, furnished the Commission with an original and first and second carbon copies of the transcript of each of the cases, with his certificate attached to the original of each case. The total number of pages furnished the Commission, including specific testimony which was applicable to a particular case and general testimony which was applicable to all nine cases, was 7,563 19/25. Of this total number, 7,455 24/25 pages consisted of general testimony and 107 20/25 pages consisted of specific testimony.
While the general testimony was the same in each of the cases, the transcript differed in certain respects, including names of the respondents, particular testimony applicable only to a given case, notations as to the offering and marking of exhibits, exhibit numbers, index, and page numbers. It was accordingly necessary to prepare an entirely separate transcript, original, and first and second carbons thereof, in each case, and it was not possible to use carbons of the general testimony for insertion in the various cases. The work, however, in preparing each of the cases, except *450 the first case, in which the general testimony was taken, was substantially less than that required in the first case, although it was substantially greater than would have been required for the preparation of additional copies of the completed transcript of the first case.
From time to time, as the work was completed in the Hat cases, plaintiff delivered the transcripts to the Commission and submitted vouchers for the payment thereof at the contract rate of 500 a page. After all work had been completed and delivered and all vouchers submitted on that basis, but prior to payment of all vouchers, the circumstances under which the transcripts had been prepared, that is, the preparation thereof in accordance with the instructions of the Examiner, came to the attention of the Commission. At that time vouchers had been approved for payment and payment had been made for 6,07423/25 pages at the fifty-cents a page rate. The Commission wrote to plaintiff calling attention to this fact and raised the question as to whether or not the rate of 500 a page provided in the contract was applicable to this work and suggested a conference “with the view of arriving at some appropriate adjustment of the question.” Shortly thereafter the conference suggested by the Commission was held between^plaintiff and a representative of the Commission. At this conference the Commission took the position that the contract did not govern the class of service rendered by plaintiff in the preparation of the transcript in the Hat cases, and plaintiff took the position that the regular 500 a page rate provided in the contract was applicable to the work. Not being able at the conference to arrive at an adjustment of the controversy in respect to the pay plaintiff was entitled to receive for this work, a series of letters was thereafter exchanged between the plaintiff and the Commission. This correspondence is fully set out in the Findings of Fact and need not be- restated here in detail. It is sufficient to say that through this correspondence plaintiff and the Commission reached an agreement that the Commission would pay, and plaintiff would accept, 300 a page as compensation for services performed in the nine Hat cases, and that plaintiff *451 would refund the difference between the 500 a page received by him for work already paid for and the 300 a page agreed upon.
Although plaintiff revised all unpaid vouchers to conform to the agreement of 300 a page for transcript in the Sat oases, and forwarded' them to the Commission, he failed to refund the difference between the 500 a page rate received by him for transcript already paid for and the 300 a page agreed upon as compensation for the work. He now brings suit and demands payment at the rate of 500 a page for transcript furnished in all nine Sat eases. The' defendant has filed its counterclaim for $746.77, the difference between the amount of compensation plaintiff was entitled to receive on the basis of 300 a page for transcript and the amount already received by him on the basis of 500 a page.
The rule is so well settled and the principle involved is so elementary that an exchange of letters may constitute a valid contract, that a citation of supporting authorities is not necessary. The parties here found themselves in disagreement as to whether the services involved fell within the contract provisions of 500 a page for transcript furnished. The plaintiff contended that it did, and the defendant maintained that it did not. Undoubtedly it was competent for them, if they saw fit to do so, to enter into a new contract covering such services. This they did and reached an agreement through an exchange of letters. Plaintiff does not contend that these letters standing alone and of themselves do not constitute a new contract whereby the defendant agreed to pay and plaintiff agreed to accept 300 a page for the transcript involved, but says that he agreed to the rate of compensation of 300 a page for transcript in these cases only in the event that his contract with the Commission would be renewed for another year, thereby enabling him to make up to some extent for the loss resulting from the proposed adjustment, and asks the court to make a finding to that effect. There is uothing in the letters exchanged by plaintiff and the defendant in respect to the controversy on which a finding such as that requested *452 can be based. The renewal- of plaintiff’s contract for another year is not mentioned or referred to by either party in the correspondence through which the agreement was reached. The only basis for the finding requested is an alleged oral agreement between plaintiff and a representative of the Commission to the effect that his contract with the Commission would be renewed for another year, provided he agreed to the adjustment then under consideration. Aside from the fact that the representative of the Commission who plaintiff says made this oral agreement with him categorically denies having made such agreement, and the agreement is therefore not proven, plaintiff’s requested finding may not be made for the reason that parol testimony is inadmissible to add to or alter in any way the terms of a written agreement. Emerson v. Slater, 22 How. 28; De Witt v. Berry, 134 U. S. 306; Thompson v. Insurance Company, 104 U. S. 252.
We ai’e not here concerned with the question of whether plaintiff under a correct interpretation of the original contract was entitled to be paid 500 a page for the transcript in the nine Hat cases. The original contract in so far as the services under consideration are concerned was abrogated when the parties entered into a new contract specifically fixing the rate of 300 a page for transcript. The services had been completely performed when the defendant raised the question as to the rate of compensation. Not only had the services been performed, but plaintiff had received pay at what he claimed was the proper rate under the contract for the major portion of the services. Plaintiff in these circumstances had the right to stand on his claim that the work fell within the original contract provision of 500 a page for transcript, and insist on the payment of unpaid vouchers on that basis. He did not, however, elect to take this course but chose rather to negotiate a settlement of the controversy with the defendant, as a result of which the defendant agreed to pay and plaintiff agreed to accept as compensation for the services already performed 300 a page for transcript furnished. Plaintiff voluntarily entered into this agreement, and it is binding upon him.
*453 It must therefore be held that plaintiff is not entitled to recover on the petition and that the defendant is entitled to recover the amount of its counterclaim, $746.77. Judgment in that amount is awarded the defendant. It is so ordered.
Whaley, Judge; LittletoN, Judge/ GREEN, Judge; and Booth, Chief Justice, concur.