ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Goodloe Marine, Inc. | ) | ASBCA No. 61960 |
| | ) | |
| Under Contract No. W912EP-11-D-0020 | ) | |

APPEARANCES FOR THE APPELLANT: Michael H. Payne, Esq.
  Cohen Seglias Pallas Greenhall & Furman PC
  Philadelphia, PA

  Casey J. McKinnon, Esq.
  Cohen Seglias Pallas Greenhall & Furman PC
  Washington, DC

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
  Engineer Chief Trial Attorney
  Susan E. Symanski, Esq.
  Bruce E. Groover, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Jacksonville

OPINION BY ADMINISTRATIVE JUDGE PROUTY ON THE GOVERNMENT'S
MOTION FOR SUMMARY JUDGEMENT[1]

      This is a case in which the government suspended work on the above-captioned dredging contract (the contract) for a little less than three months and the contractor, Goodloe Marine, Inc. (Goodloe) did not submit a claim seeking compensation for the added costs it incurred due to that suspension until more than five years and nine months after that suspension was lifted. Respondent, the United States Army Corps of Engineers (the Corps or the government), moves for summary judgment, contending that the Federal Acquisition Regulation (FAR) 52.242-14, Suspension of Work, requirement that a claim be "asserted in writing as soon as practicable after the termination of the suspension" is a specialized statute of limitations that trumps the general six-year Contract Disputes Act statute of limitations. Were we writing this opinion on a blank slate, we might join the government in saying to Goodloe, "too bad, so sad." Nevertheless, for reasons explained below, prior law interpreting this and similar FAR provisions leads us to deny the government's motion for summary judgment because the government has not established that it was prejudiced by Goodloe's delay in asserting its claim in writing.

---

[1] This appeal was recently assigned to the undersigned.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The undisputed material facts are straightforward and, for the most part, agreed upon by both parties.  The contract involved in this appeal was a Multiple Award Task Order Contract for dredging near Tampa, Florida (*see* R4, tab 10; SUMF ¶ 1).[2] The contract included the standard FAR 52.242-14, Suspension of Work (APR 1984), clause (*see* R4, tab 1 at 59; 178) and a standard liquidated damages clause, FAR 52.211-12, Liquidated Damages – Construction (SEP 2000), tailored to set the amount at $1,026 per day late (R4, tab 11 at 697).  By Delivery Order 002, dated January 6, 2012 (*see* R4, tab 13 at 989), the Corps directed Goodloe to perform a number of services, including dredging at "Cut-A," "Cut-C," and the Alafia River Channel (*id.* at 991-92).  Delivery Order 002 had a delivery date for the aforementioned services of June 20, 2012 (R4, tab 13 at 1001).  The Corps later extended that delivery date (R4, tab 20 at 1029).

One June 15, 2012, the Corps issued a "Suspension of Work" to Goodloe for the Cut-A, Cut-C and Alafia River Channel work on the basis of Goodloe's alleged "failure to prevent impacts to migratory birds and their nests in accordance with" relevant contractual specifications.  This suspension was to last until the end of the migratory bird season on August 31, 2012.  (R4, tab 33 at 1855)  Goodloe proposed a change to its procedures to allow it to resume its operations earlier (*see* R4, tab 35), but the Corps rejected it (*see* R4, tab 36).  The suspension was ultimately lifted on September 4, 2012 (SUMF ¶ 10).

By early October 2012, the Corps was withholding liquidated damages in the amount of $53,352 for Goodloe being 52 days late (at that time) in completing the contract (app. supp. R4, tab 1 at 1-2).  In a subsequent letter from Goodloe to the Corps dated October 10, 2012, Goodloe complained of the assessment of liquidated damages, writing:

> Therefore, due to the fact that Goodloe Marine is of the opinion that the Corp improperly shut the project down for more than 80 days and has assessed [liquidated damages] for that period without any discussion gives us no recourse than to reserve our right to file a claim.

---

[2] "SUMF" refers to a paragraph of the "Statement of Undisputed Material Facts" within the government's motion for summary judgment.  Unless otherwise noted, every such paragraph cited has been conceded by Goodloe in its "Statement of Genuine Issues of Material Fact" (SGMF) contained within its opposition to the government's motion for summary judgment.

(App. supp. R4, tab 1 at 6).  The same letter rejected the Corps' purported oral offer to waive liquidated damages in return for Goodloe's executing a release (*id.*).

In a letter dated October 30, 2012, Goodloe reiterated that it would not execute a modification that it saw as "requiring Goodloe Marine to give up the right to turn in a claim" (app. opp'n, ex. 1 at 1).[3]

On August 14, 2013, Ms. Victoria Read from the Corps emailed the final progress payment paperwork to Goodloe (app. supp. R4, tab 3 at 16-17).  Goodloe responded the same day:

> As you should already know Goodloe Marine will be submitting several claims on the above referenced contract. We are working on variation and estimated quantities claims as well as other claims.  We do not anticipate having these claims finalized for the next several months and therefore will not be signing a release of claims at this time.

(*Id.* at 16).

The claims were not, apparently, finalized in the next several months.  Rather, the claim at issue today was submitted by Goodloe to the Corps on June 14, 2018. This claim sought $1,879,000 for additional costs incurred during the government-ordered suspension.  It alleged that Goodloe was entitled to this relief both under the Suspension of Work clause and because the Corps violated the implied duty to cooperate.  (R4, tab 38 at 1863)  The contracting officer (CO) denied the claim on November 5, 2018 on the bases that it was submitted both after final payment and not as soon as practicable after termination of the suspension (R4, tab 39).

Goodloe brought a timely appeal to the Board.

---

[3] Exhibit 1 to Goodloe's opposition to the government's motion for summary judgment is this letter.  In general, we prefer to consider citations to the Rule 4 file as supplemented, but we also recognize that a response to a motion for summary judgment must sometimes be submitted prior to supplementation of the Rule 4 file.

DECISION

## I.    The Standard of Review

The standards for summary judgment are well established and need little elaboration here.  Summary judgment should be granted if it has been shown that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A non-movant seeking to defeat summary judgment by suggesting conflicting facts "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).  Nevertheless, "[t]he moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment."  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## II.    At First Blush, The Suspension Clause Appears to Foreclose Goodloe's Very Tardy Claim

### A.    The Plain Text of the Suspension Clause Requires A Claim To Be Asserted As Soon As Is Practicable

For good reason, the Corps directs us to the text of the Suspension of Work clause which, in relevant part, provides:

> (c)  A claim under this clause shall not be allowed (1) for any costs incurred more than 20 days before the Contractor shall have notified the Contracting Officer in writing of the act or failure to act involved (but this requirement shall not apply as to a claim resulting from the suspension order), and (2) unless the claim, in an amount stated, is asserted in writing as soon as practicable after the termination of the suspension, delay, or interruption, but not later than the date of final payment under the contract.

FAR 52.242-14, Suspension of Work (APR 1984).

The first part of this clause is inapplicable to the government's motion because the claim, of course, resulted from a suspension order.  The government advances no argument otherwise.

4

The second part of the clause appears fatal to Goodloe's ability to maintain this appeal: in requiring a claim in a specified amount to be submitted in writing "as soon as practicable after termination of the suspension," it imposes a requirement upon Goodloe that it plainly did not meet. Although the government brief references a case providing a definition of "practicable," *see* gov't mot. at 5-6 (citing *Food Mkt. Merch. v. Scottsdale Indem. Co.*, 196 F. Supp. 3d 1004 (D. Minn. 2016)), we need not split any fine legal hairs to conclude that a claim submitted more than 5 years and 9 months after the lifting of the suspension of work[4] is presumptively not "as soon as is practicable" – especially when Goodloe has presented no evidence or even argument that bringing the claim earlier would have been impracticable. Indeed, Goodloe's writing in August 2014 that it anticipated bringing the claim in a few months indicates just the opposite.

Goodloe makes a somewhat half-baked argument that, since there has been no final payment, the claim is not late[5] (*see* app. opp'n at 7). This argument is unpersuasive. Under the text of the Suspension of Work clause, "but not later than the date of final payment under the contract" does not mean that the claim may be submitted as soon as practicable after the suspension is lifted – or not later than the final payment; rather, it means that final payment is an absolute deadline in addition to the practicability phrase. This is consistent with the longstanding practice in government contracting that final payment typically includes waivers of future claims, *see* FAR 52.232-5(h), Payments Under Fixed Price Construction Contracts, which would naturally preclude payment of any subsequent claims. If, as Goodloe seems to argue, it is enough to submit the claim prior to final payment, there would be no point in the "as soon as practicable" language, and the inclusion of inoperative language, of course, is a disfavored contractual interpretation. *See*, *e.g.*, *Hercules, Inc. v. United States*, 292 F.3d 1378, 1381 (Fed. Cir. 2002) ("contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract"); *Hunkin Conkey Constr. Co. v. United States*, 461 F.2d 1270 (Ct. Cl. 1972) (rejecting contract interpretation that would render a clause in the contract meaningless). Goodloe's "or" interpretation would also lead to the result that a suspension of work claim could be

---

[4] It has not escaped our notice that, in addition to being more than five years and nine months after lifting of the suspension, the claim was also submitted one day shy of six years after the suspension was imposed by the Corps. Six years, of course, is the Contract Disputes Act's (CDA) general statute of limitations for the submission of a claim to the CO. *See* 41 U.S.C. § 7103(a)(4)(A).

[5] The argument is somewhat disjointed: it appears to argue that the Corps is wrong in alleging that Goodloe had accepted final payment before submitting its claim as the Corps apparently did in its answer and in the CO's final decision (*see* app. opp'n at 7), but the government's motion plainly retreated from that position and based its request for relief solely on the "as soon as practicable" language (*see* gov't mot. at 5).

submitted after final payment, which is contrary to the notion, discussed above, that final payment typically forecloses the submission of additional claims.

B. Goodloe's Assertion About the CDA's Statute of Limitations is Undeveloped

Another undeveloped argument advanced by Goodloe is that the CDA's statute of limitations, with which it (by the skin of its teeth) complied, is dispositive (app. opp'n at 6). There might be something to this argument, even if it was buried in a single sentence of Goodloe's brief, because the statutory text references the CDA's 6- year statute of limitations as "general," *see* 41 U.S.C. § 7103(a)(4)(A), while stating that the "exception" was for those claims involving fraud against the government.[6] *See* 41 U.S.C. § 7103(a)(4)(B). Does the statutory statute of limitations preclude the existence of a shorter (or longer) statute of limitations in the contract? This is a subject made somewhat more complicated by the fact that the limitation contained in the Suspension of Work clause, in its current form, dates from 1984, and, in fact, was essentially unchanged from its predecessor that was given effect in 1960, before the CDA was even a gleam in eye of the procurement community. *See Hoel-Steffen Const. Co. v. United States*, 456 F.2d 760, 763 n.2 (Ct. Cl. 1972) (providing text of 1960 version of Suspension of Work clause).

The CDA, as originally enacted in 1978, had no statute of limitations, but that was redressed with the passage of the Federal Acquisition Streamlining Act (FASA) in 1994. *See*, *e.g.*, *Lockheed Martin Aeronautics Co.*, ASBCA No. 62209, 21-1 BCA ¶ 37,891 at 184,025. If the CDA's statute of limitations was intended to preclude the imposition of other limitations in the contract, why has the Suspension of Work clause remained unchanged in the almost 30 years since the passage of FASA? Alternatively, perhaps it can be argued that the reach of the time limits in the Suspension of Work clause are such that there was no need to change them whilst being consistent with the CDA's 6-year statute of limitations.

In the end, as will be discussed below, we need not decide, based upon the paltry argument before us, the issue of the effect of the FASA-passed statute of limitations upon the contractually set limitations period. And since the matter is undeveloped here, will leave it for another day.

C. Goodloe's Good Faith and Fair Dealing Claim is not Independent of the Suspension of Work Clause

Goodloe also argues that its good faith and fair dealing claim is somehow separate from the requirements of the Suspension of Work clause and is therefore not

---

[6] Fraud is the only exception referenced in the CDA.

subject to its timely filing requirements (app. opp'n at 11). That is not the case. The doctrine of good faith and fair dealing, though certainly extensive, does not change the parties' obligations on matters already plainly addressed by the contract. *See Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,085 at 180,539; *see also Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019). The Suspension of Work clause provides a remedy for instances when performance is suspended "for an unreasonable period of time." FAR 52.242-14(b). Since the gravamen of Goodloe's failure to cooperate assertion is that the Corps' failure to act reasonably led to an extended suspension – in other words, its actions led to a suspension for an unreasonable period of time – that claim is squarely within the ambit of the Suspension of Work clause[7] and Goodloe cannot evade that clause's associated limitations upon when it may bring its claims by alleging a violation of the duty of good faith and fair dealing.

III. But, Following Prior Law, we Will not Preclude Goodloe's Pursuit of This Appeal

As grim as things might appear for Goodloe, the law is forgiving of contractors who bring claims within the CDA's statute of limitations, but outside the time limits set forth in the FAR, so long as the government is not prejudiced. That is the circumstance we are presented with here.

A. Goodloe's Claim Cannot be Rejected Unless Goodloe's Failure to Submit it as Soon as Practicable After the Lifting the Suspension was Prejudicial to the Government

Neither party cites any cases directly on point in which a case was dismissed as a result of a failure to comply with the timeliness requirements of the Suspension of Work clause, or in which the Board or a court declined to do so.[8] The closest case we have is *Hoel-Steffen*, which supports a forgiving reading of the Suspension of Work clause. In that case, the Interior Board of Contract Appeals had found that the predecessor to today's Suspension of Work clause (which did not differ materially from the clause before us here) had barred some of the contractor's claims because the contractor had not notified the CO, within 20 days, of the government's actions which led to a suspension of work. *See* 456 F.2d at 765-66. Finding that the government was on notice of the suspension within that 20-day period, even if it had not formally been

---

[7] Though it appears plain that the good faith and fair dealing contentions are redundant to, and thus effectively precluded by, the Suspension of Work clause, there is no pending motion to dismiss this count of the complaint pending before us and we will not act *sua sponte* on this matter.

[8] Although absence of evidence is not evidence of absence, this does marginally support an inference that the government has declined to advance this defense over the years. Marginally.

placed on notice by the contractor, the Court of Claims rejected the Interior Board's dismissal of the contractor's appeal, stating:

> To adopt the Board's severe and narrow application of the notice requirements . . . would be out of tune with the language and purpose of the notice provisions, as well as with this court's wholesome concern that notice provisions in contract-adjustment clauses not be applied too technically and illiberally where the Government is quite aware of the operative facts.

456 F.2d at 767-68 (citing *Copco Steel & Engineering Co. v. United States*, 341 F.2d 590, 598 (Ct. Cl. 1965)). In *Copco*, cited by *Hoel-Steffen*, the Court of Claims noted that:

> Lack of strict compliance with many kinds of contract requirements concerning writings and notifications have frequently been held to be of no consequence where the conduct of the parties have made it clear that formal adherence would serve no useful purpose or that the parties have in fact waived it.

341 F.2d at 598 (citing multiple cases).

The *Hoel-Steffen* and *Copco* courts' proscriptions against "severe and narrow" readings of notice provisions, *see Hoel-Steffen*, 456 F.2d at 767-68, have been applied widely. To look at one well-known example: the FAR's differing site conditions clause, FAR 52.236-2, Differing Site Conditions (APR 1984), requires the contractor to "promptly, and before conditions are disturbed, give written notice to the Contracting Officer" of differing site conditions that it encounters, *see* FAR 52.236-2(a), and further provides that "[n]o request by the Contractor for an equitable adjustment to the contract under this clause shall be allowed, unless the Contractor has given the written notice required. . . ." *See* FAR 52.236-2(c). On its face, this would appear to give the government a perfect defense to a differing site conditions claim when the notice, in writing, had not been provided. Nevertheless, it has long been held that this clause does not preclude contractor claims advanced without the required notice so long as the government was not prejudiced by the lack of such notice. *See, e.g., R.B. Hazard, Inc.*, ASBCA No. 34289, 90-3 BCA ¶ 22,959 at 115,308 (citing, *inter alia*, *Copco*); *Dawco Const., Inc. v. United States*, 18 Cl. Ct. 682, 694 (1989), *rev'd on other grounds*, 930 F.2d 872 (Fed. Cir. 1991).

We further note that similar results have followed in the past from the application of notice requirements stemming from the Changes clause, which required written notice of the contractor's claim within 30 days of receipt of a written change

order. *G.M. Shupe, Inc., v. United States*. 5 Cl. Ct. 662, 727, n.33 (1984). In *Shupe*, the Claims Court held that this contractual provision did not prevent a later claim when the government was aware of the operative facts at the time they occurred. 5 Cl. Ct. at 727. *Shupe* is not binding upon us[9], but it is persuasive and is also evidence of the consensus view broadly applying *Copco*.

With this background in mind, we hold today that a claim to the CO is not foreclosed by operation of the Suspension of Work clause on the basis of its not being brought "as soon as practicable" after the end of the suspension of work, so long as the lateness of the submission does not prejudice the government.[10]

In seeking to avoid this result, the government makes the fair point that the language in the part of the Suspension of Work clause that it relies on is different than the language addressed by the court in *Hoel-Steffen* (gov't reply at 6). To be sure, the language the government relies upon is different than the portion of the Suspension of Work clause addressed in that case and it is also somewhat different than the language in the Differing Site Conditions clause. Nevertheless, the Court of Claims's statements in *Hoel-Steffen* and *Copco* are broad and not limited by the precise language of the contract clauses being discussed, just as the language of the Changes clause in *Shupe* was, in fact, very much like the language the government relies upon in the Suspension of Work clause. Thus, the government's distinctions, though real, make no difference.

B. <u>Though Hardly Ideal, Goodloe's Failure to Submit a Written Claim to the Contracting Officer as Soon as Practicable After the Removal of the Suspension did not Prejudice the Government</u>

Goodloe's claim, rather than being brought as soon as practicable, was brought as late as possible whilst still being within the CDA's statute of limitations. Nevertheless, we still find no prejudice[11] to the government and thus allow this suit to go forward.

---

[9] It is a case from the United States Claims Court, the predecessor to the Court of Federal Claims, and successor to the trial division of the Court of Claims. It should not be confused with the Court of Claims, which is a predecessor to the Court of Appeals for the Federal Circuit, and whose appellate decisions are binding upon us.

[10] Lest there be any ambiguity, this rule of law says nothing about the operation of the CDA's statute of limitations, which remains unaffected.

[11] Obviously, needing to defend itself in this matter at all is prejudicial to the government. The prejudice to which we are referring is prejudice stemming from Goodloe's submitting the claim when it did, rather than as soon as practicable after the removal of the suspension of work.

First, we note that the burden of proof is on the government to prove prejudice in these circumstances. *See Dawco*, 18 Cl. Ct. at 693 (citing *Shupe*, 5 Cl. Ct. at 727). This is even more so in today's context in which the government is advancing a motion for summary judgement and the burden is upon it to prove the material facts that would entitle it to judgment. *See Mingus*, 812 F.2d at 1390.

We further note that the government has provided no evidence of its being prejudiced by the late filing of the claim. To the contrary, the undisputed evidence before us is that, within months of the lifting of the suspension, Goodloe made the government aware that claims were coming. To the extent that the government might argue that it needed to be put on notice to preserve evidence, that was accomplished. Moreover, Goodloe's refusal to accept final payment provided further notice to the government that it could not "close the books" on this contract. Based upon the evidence before us, which we interpret in favor of the non-movant, Goodloe, we conclude that the government suffered no prejudice by virtue of Goodloe's failure to submit its claim as soon as practicable after the lifting of the suspension of work.

## CONCLUSION

Though Goodloe plainly failed to submit its claim to the CO as soon as was practicable after the lifting of the suspension in this matter, this failure did not prejudice the government. Thus, in accordance with applicable law, the text of the Suspension of Work clause does not require dismissal of this appeal. The government's motion for summary judgment is accordingly denied.

Dated: July 12, 2023

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

I concur                                                    I concur


_____                    _____
RICHARD SHACKLEFORD                          DAVID D'ALESSANDRIS
Administrative Judge                                 Administrative Judge
Acting Chairman                                       Armed Services Board
Armed Services Board                              of Contract Appeals
of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61960, Appeal of Goodloe Marine, Inc., rendered in conformance with the Board's Charter.

Dated:  July 12, 2023


_____
PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals